John C. Gaut, Special Judge,
delivered the opinion of the Court.
At the May Term of the Circuit Court of Wilson County, the Grand Jury of said court returned into said court a bill of indictment against the plaintiffs in error, and Henry Sewell, indorsed by their foreman, a true bill, which is in the following words and figures:
"State oe Tennessee, . \ " Wilson Comity, j
"Circuit Court,
"May Term, 1868.
"The Grand Jurors for the State of Tennessee, upon their oaths, present, that Henry Palmer, colored, and Henry Sewell, colored, on the 13th day of March, 1868, in the County of Wilson, did feloniously break open the house of one Sarah Joplin, for the purpose of committing a larceny therein, and then and there feloni-ously stealing and carrying away sixteen pieces of bacon of the value of twenty dollars, and one bucket of the value of one dollar, the property of the said Sarah Joplin, against the peace and dignity of the State.
(Signed) "James M. Brien, Attorney-general.”
*84 At the June Term, 1869, of said court, on the application of the plaintiff in error, a severance on the trial of himself and his co-defendant in the indictment, was permitted by the Court, and upon the plea of not guilty by the plaintiff in error. Under the charge of the Court, the jury returned a verdict of guilty against him in manner and form, as charged in the indictment, and for such, his offense, the jury said he should undergo confinement in the penitentiary of this State, ten years.
Motions for a new trial and arrest of judgment, were made by the defendant in the court below, and severally overruled, and the judgment of the law pronounced upon the finding of the jury. Thereupon, the defendant tendered his bill of exceptions to the Court, and appealed in error to this Court.
The indictment is predicated upon the second section of the Act of the General Assembly of this State, passed May 17th, 1865, which section reads as follows:
“Be it enacted, That whoever shall feloniously break Open the house of another, for the purpose of committing a larceny or robbery therein, shall, on conviction thereof, suffer death by hanging; Provided, the jury before whom the offender is tried and convicted, may, if they think proper, commute the punishment for the offense to imprisonment in the penitentiary for the period of not less than ten nor more than twenty-one years.”
It is insisted by the Attorney-general for the State, that, on the night of the 13th of March, 1868, in the county of Wilson, the plaintiff in error broke open the smoke-house of Mrs. Sarah Joplin, and stole and car *85 ried therefrom, about three hundred pounds" of bacon and a bucket containing a quantity of lard, the personal property of the said Sarah Joplin, and for such, his offense, he is guilty under the provisions of said section of said Act of 1865.
The plaintiff in error, by his counsel, insists that the Legislature, by the use of the words, “that whoever shall feloniously break open the house of another, for the purpose of committing a larceny or robbery therein;” did not mean the smoke-house or store-house of another, but meant to attach the death penalty to the offense of burglary under section 4672 of the Code, by breaking and entering the mansion-house, by night, with intent to commit a felony; or, as the case may be, for breaking or entering the mansion-house by day, with the intent to commit a felony under .section 4673 of the Code. And that the indictment in this cause can not be sustained under either of said sections of the Code; because, if under the former, the indictment must aver the offense to have been committed in the night time; and if under the latter, it must aver that the offense was committed in the day time.
This is the question, so far as we are advised. It has been incumbent upon this Court to construe the meaning of the said second section of said Act of 1865. It is highly penal in its enactment and comprehensive in its provisions. If the Legislature meant by the words, bréale into the house of another, for the purpose of committing a larceny or robbery therein, to include any house of another, it would include smoke-houses, store-houses, ware-houses, barns, stables, etc. They are, in the lite *86 ral sense of the word, houses; but not the houses of others, in the common acceptation and meaning of the word house. When we speak of the house of another, we mean his mansion-house, wherein he lives and sleeps. If the Legislature meant any house of another, wherein larceny or robbery could be committed, then all larcenies, without regaid to the grade, either grand or petit, are raised to capital offenses, if committed by day or night, by breaking open and stealing from any smokehouse, spring-house, chicken-house, store-house, or any building or tenement falling under the denomination of a house. We wish neither to extend nor abridge the intention of the Legislature in the statute, but to comprehend their intention and execute the law as it was intended by the legislative department of the government.
It is a general rule, that the words of a statute, if of common use, are to be taken in their natural and ordinary sense, without any forced or subtle construction to limit, or extend their meaning; and the real intention, when ascertained, will always prevail over the literal sense of the terms used.
The State vs. The Clooksville R. Turnpike Co., 2 Sneed, 88; 1 Kent Com., 461-2.
The words of a statute, if of common use, are to be taken in their natural and ordinary signification and import; and if technical words are used, they are to be taken in a technical sense, unless it clearly appears from the context, or other parts of the statute, that the words were intended to be applied differently from their ordinary, or their legal acceptation: 1 Kent Com., 462.
*87 Taking the rules of interpretation just announced for our guidance, we think the legislators meant by the words, “the house of another,” his mansion or dwelling-house, and houses connected therewith, as in law, is a part and parcel of the mansion-house; that said words used in the statute, are employed in their common and ordinary acceptation and meaning; that is, when we speak of our house, or neighbor’s house, the house of another, we mean our dwelling-house, our neighbor’s dwelling-house, the dwelling-house of another — -the edifice wherein he and his family live, as contra-distinguishing it from his store-house, his ware-house, corn-house, or any edifice or building, that may be called a house; but in fact and in law, is not his mansion-house or any part thereof.
We do not believe the legislators meant by the words, “the house of another,” in the 2nd section of said Act of 1865, to inflict the punishment of death by hanging, upon offenders who may be guilty of breaking into outhouses, store-houses, ware-houses, etc., for the purpose of committing larceny. If they did so intend, then all larcenies, and all breaking into such houses for the purpose of committing a larceny, are raised to capital punishment, without regard to the value of the property stolen, or intended to be stolen, at such breaking, and the crimes of petit and grand larceny are capital offenses, punishable with death; but in the discretion of the jury trying the offender, they may commute the punishment to confinement at hard labor in the penitentiary of this State, for not less than ten, nor more than twenty-one years.
We do not believe the legislators intended by the 2nd *88 section of said statute, to produce such a radical change in the Criminal Code of this State.
But, in view of the existing state of society in this State, at and before the passage of said Act of 1865, and the lawlessness, crime and violence, then prevailing in many parts of the State, and to afford the citizens more protection by day and night, from thieves and robbers, in their dwelling-houses, we believe was the inducement to the passage of said Act of 1865; and that the Legislature meant by the words the house of another, the mansion-house and such houses as in law were appurtenant to and a part thereof.
Having arrived at this conclusion, after serious consideration, it remains to be seen with what crime, if any, the prisoner is charged in the bill of indictment, and whether the proof in the record sustains the charge, and warranted the verdict of the jury; and was the charge of the Court below to the jury applicable to the prisoner’s case, and sustained by the proof in the cause?
The indictment charges the offense alleged, to have been committed by the prisoner and Hemy Sewell, in the language of the statute. That is, that they feloni-ously broke and opened the house of Sarah Joplin, in Wilson County, for the purpose of committing a larceny therein, and then and there feloniously stealing and carrying away the bacon and bucket of Sarah Joplin, etc.
We have seen that the words house of Sarah Joplin, means her mansion-house, including such apartments and houses as in law are included by the word, mansion-house. And the indictment upon its face, is a good indictment. But the proof in this record discloses the *89 fact that the bouse of Sarab Joplin, alleged to bave been broken open and the property stolen therefrom, was her smoke-house, containing her bacon and bucket of lard, which were stolen therefrom. But the proof does not show how or where the smoke-house of Sarah Joplin was situated in reference to her dwelling-house, nor whether it was within the curtilage surrounding her house, or in a distant enclosure. Nor does the proof show that the smoke-house was connected with, or contributory to, the dwelling-house of Mrs. Joplin, and used by the family as a necessary appendage to the dwelling-house, only so far as the proof shows that she had bacon and lard in the smoke-house at the time it was broken open.
While there seems to be some conflict in the authorities under indictments for burglary, whether the smokehouse can be considered a part and parcel of the mansion-house, in the case of The State vs. Bryant Ginus, 1 Nott and McCord, 583, Mr. Justice Nott, who delivered the opinion of the Court, says: A house to be a parcel of the mansion-house, must be somehow connected with or contributory to it, such as kitchen, smoke-house, or such other as is usually considered a necessary appendage of a dwelling-house.
In the case of The State vs. Henry A. Langford, 1 Deveraux, (North Carolina,) R., 253, Judge Henderson, says: The law throws a mantle around the dwelling of man, and protects, not only the house in which he sleeps, but also all others appurtenant thereto, as parcels or parts thereof, from meditated harm. Thus, the kitchen, laundry, smoke-house and dairy — for they are *90 all used as parts of one whole — each contributing in its way, to the comfort and convenience of the place as a mansion or dwelling-house.
These authorities are approved by this Court in the case of Armacer vs. The State, 3 Hum., 379, by Jugde Turley, who delivered the opinion of the Court. Also, in Douglas vs. The State, 6 Yerg., 525 and 530.
We cannot decide from the proof in this record, whether the smoke-house of Sarah Joplin was within the same inclosure of her dwelling-house, or how near to, or how far distant it was from her dwelling-house, or how used by her — only that she had bacon and lard stored therein — so as to determine the guilt of the prisoner, if this was an indictment in form, for burglary. On the trial in the court below, the proof does not seem to have been directed to the question of burglary, or to the fact whether the smoke-house was, or was not, so connected with the dwelling-house as to form a part thereof. Nor in this opinion do we mean to be understood as intimating an opinion, in the absence of the necessary facts, whether we would hold the prisoner guilty under the 2nd section of said Act of 1865, if the proof should show upon another trial, that the smokehouse was so situated and used as to be a part of the dwelling-house of Mrs. Joplin, under an indictment for burglary. We reserve the question until the facts are disclosed. The indictment against the prisoner and Henry Sewell, charges them with the offense of grand larceny, if no higher offense. And under an indictment for grand larceny, the jury may find the accused guilty of grand or petit larceny, or no offense, according to the *91 proof. If for grand larceny, they may convict and fix the punishment in the penitentiary of this State, in their discretion, for as short a time as three years, or for as long as ten years. If for petit larceny, for one year, and not exceeding five years, and recommend the prisoner to the mercy of the Court; which means to recommend to the Court to commute the punishment in the penitentiary to a fine and imprisonment in the county jail. And if the Honorable Court below had taken this view of the case, and had charged the law as applicable to larceny, for anything we can know, the jury may not have deemed it their duty to fix the term of the- prisoner’s punishment for the offense as long as ten years.
But it is evident from a careful reading of the charge of the Court below to the jury, that he regarded the words, “broke into the house of another,” in the 2nd section of the Act of 1865, to mean any house, be it mansion-house, out-house, or smoke-house, or any other kind of house belonging to another; and his charge left no discretion to the jury to fix the time of confinement in the penitentiary at a shorter period than ten years.
And for the reasons stated, we think the prisoner ought to have a new trial; Several exceptions have been taken by the prisoner’s counsel to the charge of the Court below, which we think not tenable. The charge; when taken as a whole, is clear, full, and the law of the land, so far as it is applicable to a case of larceny.
Let the judgment be reversed, and a new trial granted, and the cause remanded.